**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rickey Guy Fugate,<br><br>                    Plaintiff,<br><br>vs.<br><br>Wickenburg Town Hall, a.k.a., Town of Wickenburg in its official capacity as employers of Wickenburg Police Officers; Detective Kenneth Lutkiewicz, Wickenburg Police Department: in his official capacity; Sergeant Walter A. Brinkman, Wickenburg Police Department, in his official capacity; Sergeant Owen Black, Wickenburg Police Department, in his official capacity; Officer Dan Webb, Wickenburg Police Department, in his official capacity,<br><br>                    Defendants. | No. CV-11-00194-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff Rickey Guy Fugate's "'Amended' Complaint" (Doc. 9), filed *in forma pauperis* and therefore subject to screening by this Court; and Fugate's "Motion to Appoint Pro Bono Council [*sic*]" (Doc. 8). The Court screened Fugate's original complaint and dismissed it for lack of detail necessary to state a plausible claim. Fugate's amended complaint provides significant detail, but also demonstrates that he cannot state a claim for which relief can be granted. Fugate's complaint will therefore be dismissed with prejudice, his motion for appointed counsel will be denied as moot, and the case will be closed.

## I.   LEGAL STANDARD

Permitting Fugate to proceed *in forma pauperis* obligates this Court to screen his complaint under the following standards.

### A.   Screening Standard

When this Court permits a party to file *in forma pauperis*, the Court "shall dismiss the case at any time if the court determines" that the "allegation of poverty is untrue" or that the "action or appeal" is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). While much of § 1915 outlines how prisoners can file proceedings *in forma pauperis*, § 1915(e) applies to all *in forma pauperis* proceedings, not just those filed by prisoners. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("section 1915(e) applies to all *in forma pauperis* complaints"). "It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Id.*

### B.   Failure-to-State-a-Claim Standard

To state a claim for relief under Rule 8, a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This "short and plain statement" must also be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible if it contains sufficient factual matter to permit a reasonable inference that the defendant is liable for the conduct alleged. *Id*. A proper complaint needs no "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, but the complaint must at least contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *id*. All of the plaintiff's plausible factual allegations are accepted as true and the pleadings are construed in a light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Further, despite *Twombly* and *Iqbal*, courts continue to construe pro se filings liberally,

and give such plaintiffs "the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## II.     BACKGROUND

According to Wickenburg Police Department reports, a domestic violence dispute took place in Wickenburg on Friday, November 20, 2009. One party to that dispute was Tina Stotz; the other party was Lyle Stotz. Tina Stotz reportedly instigated the violence and caused property damage. The Wickenburg police officer who responded to the incident, Defendant Owen Black, observed Tina Stotz's erratic behavior and eventually arrested her for disorderly conduct and criminal damage. Later that day, Tina Stotz was booked into a Maricopa County jail. The mug shot taken at booking reveals bruises on her lower left face and chin.

Early the next morning (Saturday, November 21), Plaintiff Fugate received a call from Tina Stotz. Stotz and Fugate had previously been in a romantic relationship, but by this point, Stotz had a protective order against Fugate. Stotz nonetheless called Fugate and asked him if she could stay at his place upon release from jail. Fugate agreed, on condition that Stotz's conditions of release specifically state that she must reside at Fugate's address. Fugate demanded this condition because he believed it would negate any claim that he had violated the protective order against him. Stotz succeeded in convincing the jail commissioner to require her to reside at Fugate's address, and she was released sometime in the pre-dawn hours on her own recognizance with a conditions-of-release order listing Fugate's address as the address at which Stotz must reside.

Later that morning, Stotz returned to the location of the previous day's domestic violence dispute, supposedly to gather her belongings. Another Wickenburg police officer, Defendant Dan Webb, was dispatched to the location with a "civil standby" assignment — *i.e.*, to ensure that further violence did not result from Stotz's return. Webb noted that Stotz had a small bruise on her left chin. She and Lyle Stotz did get into a brief argument, but the incident required no intervention from Webb. When Webb saw that Tina Stotz had collected her things, he advised her to leave. At that point, Stotz fell

to the ground, landed on her back, and became unresponsive. Webb began to call an ambulance, but Stotz then picked herself up and left the scene.

Sometime the next day (Sunday, November 22), Stotz began residing in Fugate's home. The following Wednesday (November 25), Defendant Webb was summoned to Fugate's home in response to a domestic violence complaint from Stotz. Fugate was not home, but Stotz was. Stotz told Webb that, since she moved into Fugate's home, Fugate had beat her and raped her on more than one occasion. During the interview with Stotz, Webb noticed that the bruise he had seen a few days earlier on Stotz's left chin had grown larger. Stotz claimed that Fugate had hit her there.

Based on Webb's interview with Stotz, the Wickenburg Police Department began a more formal investigation, including locating Fugate and bringing him to the police station for questioning that afternoon. Defendant Lutkiewicz performed the interrogation. Fugate denied beating Stotz and attributed Stotz's injuries to her own erratic and drug-induced behavior, including punching herself and falling over. Fugate admitted having sex with Stotz, but claimed that it was consensual and initiated by her.

During the interrogation, Lutkiewicz received a phone call from a forensic nurse examiner at the Phoenix Advocacy Center, to which Stotz had been transported for a physical examination. The nurse told Lutkiewicz that there were "no significant findings in reference to the sexual assault." Nonetheless, Lutkiewicz had Fugate transported to a Maricopa County jail and booked on two counts of domestic violence assault, three counts of sexual assault, one count of interfering with judicial proceedings for disobeying a restraining order, one count of kidnapping, and two counts of domestic violence disorderly conduct. There is no record that Lutkiewicz obtained an arrest warrant before sending Fugate to the county jail.

Fugate's initial arraignment took place at about 11:00 PM on the night of November 25. At the arraignment, Fugate asserted that Stotz's mug shot from the previous week would show that she already had bruises, and Stotz's conditions of release would show that Fugate had not violated the protective order. The jail commissioner

quickly investigated these claims and agreed that Fugate presented a colorable defense, but the crimes alleged did not permit the commissioner to release Fugate on his own recognizance. The commissioner therefore set Fugate's bail at $5,000.

By this point, Wednesday, November 25, had rolled into Thursday, November 26 — Thanksgiving Day. Unfortunately, all the bail bond agencies were too busy, unwilling, or unable to help Fugate, so he spent all of Thanksgiving in jail. The next day, he located a suitable bail bond agency and was released. A few days later, a Maricopa county prosecutor concluded that there was no reasonable likelihood of convicting Fugate on the charges against him, and the case was dropped. Fugate has since obtained a protective order against Stotz, but the Wickenburg police officer assigned to deliver that protective order, Defendant Brinkman, has yet to do so.

Wickenburg's local newspaper reported Fugate's arrest, the charges against him, and the eventual dropping of those charges. Fugate's children have been taunted at school with comments such as "your dad's a woman beater" and "your dad's a rapist." Fugate's current girlfriend, who is the Wickenburg Municipal Court Administrator, has also been subject to an investigation that Fugate believes is an attempt to discover information that could be used to charge him with crimes.

Based on these alleged facts, Fugate alleges § 1983 causes of action against all defendants. He argues that the Town of Wickenburg is liable for failure to train its officers, and that all of the individual defendants knew or should have known that Fugate's arrest was without probable cause because Stotz's accusations could not be trusted in light of her erratic behavior observed by various officers in the days shortly before Fugate's arrest.

### III. ANALYSIS

#### A. Individual Officers' Liability

Fugate argues that he was arrested without probable cause, in violation of the Fourth Amendment, causing him to spend two nights in jail unnecessarily. Lack of probable cause exists where (a) a police officer did not have an arrest warrant, and

(b) facts and circumstances within the officer's knowledge were not enough to lead a prudent person to believe that the person arrested had committed or was committing a crime. *Hart v. Parks*, 450 F.3d 1059, 1065–66 (9th Cir. 2006).

Fugate primarily attacks the sexual assault charges made against him. Fugate emphasizes that Lutkiewicz learned that a medical exam of Stotz revealed nothing significant, but still charged Fugate with sexual assault anyway. He also generally believes that the officers involved could not have reasonably credited Stotz's version of events because they knew that she was an erratic, troubled person.

However, to arrest Fugate, the Wickenburg police officers needed probable cause for only one crime. The Court concludes as a matter of law that sufficient facts and circumstances within the officers' knowledge would have led a prudent person to believe that Fugate had committed domestic violence assault. Although Webb noticed bruises on Stotz's face before she accused Fugate of beating her, Webb also noticed that the bruises had gotten bigger since last he saw her. In light of all the facts and circumstances — including Webb's knowledge that Stotz had once lived with Fugate, and that she had obtained a protective order against him — a prudent person could believe that Fugate had assaulted Stotz. Accordingly, probable cause existed to arrest Fugate on at least a charge of domestic violence assault.

Probable cause also existed to arrest Fugate on the interference with judicial proceedings charge, related to the fact that housing Stotz was a violation of the protective order against him. The Court need not resolve which takes precedence — the protective order, or the later conditions-of-release the document requiring Stotz to live at Fugate's house. The question is whether facts and circumstances existed that would lead a prudent person to conclude that Fugate had violated the protective order. In this case, such facts and circumstances obviously existed. It was not the police officers' duty to research the complicated legal question raised by Stotz's conditions of release. Therefore, the Wickenburg police had probable cause to arrest Fugate on the interference with judicial proceedings charge.

Because the Wickenburg police had probable cause to arrest Fugate for at least two of the crimes alleged against him, the police permissibly took him into custody. As a matter of law, then, no constitutional violation occurred, and therefore no § 1983 violation occurred. Accordingly, Fugate's claims against the individual police officers will be dismissed with prejudice.

### B. Failure to Train

Fugate vaguely asserts a failure-to-train theory of § 1983 liability against the Town of Wickenburg:

> [Wickenburg] knew or should have known that primarily due to The Lack of Supervision of the Wickenburg Police Department, the high turn-over of Police Officers and Chief's [*sic*] of Police while experiencing Extremely low morale and with an ongoing lack of communication between the Town of Wickenburg and the Wickenburg Police Department, The Plaintiff has suffered . . . intentional misrepresentation and concealment of material facts . . . [and] malfeasance, nonfeasance and Malicious Prosecution.

(Doc. 9 at 19–20.) The Court has already concluded that the Wickenburg police officers involved in Fugate's arrest did not violate the Constitution. Thus, no basis exists for a failure-to-train claim. But to the extent a failure-to-train claim might somehow persist, Fugate's accusations against Wickenburg itself do not meet the appropriate standard. That standard, as succinctly summarized in a recent Supreme Court opinion, requires deliberate indifference to the rights of crime suspects:

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. But, under § 1983, local governments are responsible only for "their own illegal acts." They are not vicariously liable under § 1983 for their employees' actions.
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are "action[s] for which the municipality is actually responsible."

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.
>
> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011) (citations omitted). Here, Fugate has not alleged anything plausibly suggesting deliberate indifference on Wickenburg's part. At best, Fugate seems to allege that the Wickenburg Police Department is generally dysfunctional. Fugate has not alleged a specific lack of training that could have prevented his arrest and jail time. And in any event, as stated previously, Fugate's arrest and jail time did not result from a constitutional violation. Therefore, Fugate's claims against the Town of Wickenburg will be dismissed with prejudice.

IT IS THEREFORE ORDERED that Plaintiff's "Amended' Complaint" (Doc. 9) is DISMISSED. The Clerk will close this case.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Appoint Pro Bono Council [*sic*]" (Doc. 8) is DENIED as moot.

Dated this 10th day of May, 2011.

_____
Neil V. Wake
United States District Judge